Brianna Alfonso (CA SBN 366752)
*Balfonso@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Telephone: 213-438-9013
Facsimilie: 213-282-3133

*Pro Bono Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Marino PINEDA-MATAMOROS,<br>Petitioner,<br><br>v.<br><br>Cynthia ARMANT, Warden, Desert View Annex; Ernesto SANTACRUZ JR., Acting Director of Los Angeles Field Office, U.S. Immigration and Customs Enforcement; David J. VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; Markwayne MULLIN, Secretary of the U.S. Department of Homeland Security; and Todd BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. 26-10242<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Marino Pineda-Matamoros ("Petitioner" or "Mr. Pineda-Matamoros"), by and through undersigned pro bono counsel, files this petition for a writ of habeas corpus challenging his unlawful arrest and detention by Immigration and Customs Enforcement ("ICE").

2. Early in the morning on January 22, 2026, Petitioner was approached by two unknown men wearing masks and dark clothing officers as he was standing outside of a

convenience store and questioned about his legal status in the United States. After fearing for his personal safety, since two unknown individuals began to encroach on him and he feared they intended to rob or harm him, he briefly tried to flee. He did not know who they were, or why they were approaching him at approximately 6:00 in the morning in a convenience store parking lot. The plainclothes agents tackled him to the ground and stomped on his left hand. He sustained an injury to his left hand, as it was bleeding. He never received medical care for his hand and has mobility issues as a result. Petitioners questioned the identity of the individuals and was only informed after he was tackled, handcuffed and placed into a vehicle that they were ICE agents.

3. The individuals who arrested Petitioner never identified him by name, never told him they had a warrant for his arrest, nor did they at any point show one to him.

4. Shortly after being detained by ICE, he was transferred to Santa Ana Field Office to be processed. At approximately 2:00 a.m. on January 23, 2026, Petitioners arrived and was processed at the Desert View Annex detention center in Adelanto, California.

5. Almost immediately after arriving at the detention center, Petitioners began experiencing nausea and throwing up. He notified the agents at the facility about his condition. He was then transferred to Victor Valley Global Medical Center on January 23, 2026. He was diagnosed with an upper airway disease involving an esophageal obstruction that has impaired his ability to eat, drink and overall quality of life. He was hospitalized for three weeks.

6. Petitioner was arrested and detained in Santa Ana, California, without a properly executed arrest warrant in violation of immigration regulations and due process. Petitioner was also placed under arrest without officers showing him any documentation or asking him any information to assess whether he should be deemed a flight risk. Furthermore, he was hospitalized for three weeks after his ICE arrest and continues to

require medical care and treatment that Desert View Annex cannot provide. Petitioner's quality of life will continue to deteriorate if his medical issues continue to be untreated.

7. Petitioner has several family members in the United States, including his brother, who is a United States Citizen. His brother, Arnulfo Matamoros, has filed an I-130 petition for petitioner in October 2023 that is currently pending with United States Citizenship and Immigration Services ("USCIS").

8. Petitioner's detention infringes on his constitutionally protected liberty interests in his physical freedom and is unlawful pursuant to the agency's own regulations. Because of his unlawful, warrantless arrest and urgent medical issues needing immediate medical attention, the petitioner seeks immediate release from immigration detention.

9. Accordingly, petitioner asks this Court to find that his warrantless arrest and continued detention violate the Immigration and Nationality Act ("INA") and its implementing regulations and order his immediate release from custody.

## JURISDICTION

10. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

12. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

13. Venue is proper because Petitioner is detained at Desert View Annex in Adelanto, California, which is within the jurisdiction of this District.

14. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States, Petitioner Marino Pineda-Matamoros resides in this District, and a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

15. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

16. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

17. Petitioner is a citizen of Honduras and has resided in the United States for twenty five years. He is currently detained at Desert View Annex. Prior to his detention, he was a resident of Santa Ana, California. Petitioner is in the custody, and under the direct control, of Respondents and their agents.

18. Respondent Cynthia Armant is the Warden of Desert View Annex, and they have immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner. Respondent Armant is a legal custodian of Petitioner.

19. Respondent Ernesto Santacruz Jr. is sued in their official capacity as the Acting Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement. Respondent Santacruz Jr is a legal custodian of Petitioner and has authority to release him.

20. Respondent David Venturella is sued in his official capacity as Acting Director of ICE, a component agency of DHS. ICE is responsible for enforcing U.S. immigration laws, including detention of alleged noncitizens in removal proceedings, which the agency chooses to accomplish through imprisonment and removal of noncitizens with final orders of removal. As ICE's Acting Director, Respondent Venturella is a custodian of Petitioner, with legal authority to produce and release him.

21. Respondent Markwayne Mullin is sued in their official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement. Respondent Mullin is a legal custodian of Petitioner.

22. Respondent Todd Blanche is sued in their official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, they have the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

23. Petitioner is a 51-year-old citizen of Honduras. He entered the United States on or about April 3, 2001, twenty-five years ago. Petitioner was not encountered or apprehended by immigration officials at or near the border. He was arrested by ICE for the first time on January 22, 2026, without a warrant in Santa Ana, California.

24. Respondents did not present a properly executed warrant for Petitioner's arrest before ICE officers arrested and detained him. Respondents also failed to conduct an individualized analysis of the probability of petitioner's risk of flight before his unlawful arrest without a warrant.

25. Around 6AM on January 22, 2026, Petitioner was standing in the parking lot of a convenience store in the area of McFadden Avenue and Bristol Street in Santa Ana. Exh. A, I-213. Petitioner saw two men wearing masks approaching him in dark clothing. Exh. B, Petitioner's Declaration. Fearful for his personal safety, Petitioner began to flee on foot. *Id.* He was not sure who these individuals were, he feared that they wanted to harm or kill him, and he did not want to wait around for them to begin shooting. *Id.* The officers did not identify themselves as government officials or part of ICE prior to his arrest. *Id.* The vehicle they were driving and placed him in was unmarked, giving no indication that they were law enforcement agents. *Id.*

26. After a short pursuit, where Petitioner briefly fled, the plainclothes ICE officers grabbed his shirt and arm and then proceeded to tackle him to the ground. *Id.* One officer stomped on his left hand and severely injured it. *Id.* After being detained and placed in the vehicle, he showed the officer his injured hand and the fact that it was bleeding. *Id.* The officer did not acknowledge this statement or his injury. *Id.* Petitioner never received any medical treatment for this injury even after requesting treatment. *Id.*

27. After being detained, the officers restrained Petitioner and asked him if he had any identification or documentation on his person. *Id.* At no point during the encounter did they identify him by name or show that they knew anything about his identity prior to his arrest. *Id.* By the officers' own account, they also conceded the fact that they did not know who he was prior to his arrest. *See* Exh. A. They noted that they

observed a “male subject in the area of McFadden Ave. and Bristol St. …[and] decided to contact the subject to determine whether he was…of immigration interest.” Exh. A.

28. Furthermore, officers never showed Petitioner any document, paper or warrant signifying they were looking for him specifically or that they knew his identity before he was detained. *See* Exh. B. The I-213 also stated the officers were interested in whether Petitioner knew Santiago De Jesus Higareda-Avalos, who was the alleged individual they were searching for. Exh. A. However, they never asked Petitioner if he knew this individual at any point during his arrest or while he was detained. Exh. B. The officers were clearly motivated by racial intentions as they told Petitioner he did not belong in the United States and made him feel insignificant by their harassing remarks. *Id.*

29. Petitioner was taken to the Santa Ana ICE Field Office for processing. He was never asked any questions, especially any questions that would assess his status as a flight risk or danger. *Id.* He was then transported to the Desert View Annex and arrived at approximately 2:00 a.m. on January 23, 2026. *Id.*

*30.* On January 23, 2026 Petitioner notified officers that he was experiencing nauseousness and throwing up. *Id.* He was admitted to Victor Valley Global Medical Center and was diagnosed with an upper airway disease involving esophageal obstruction. Exh. C. Medical Documents. He stayed in the hospital until he was discharged on February 15, 2026. *Id.* at 18. Doctors noted that he required esophageal dilation surgery. *Id* at X. This is a routine procedure intended to widen the narrowed section of the esophagus to improve Petitioner’s ability to eat and drink. Doctors notated that on May 8, 2026 the surgery had still not occurred even though it was approved. *Id*. at 19.

31. While in the hospital, Petitioners was handcuffed by his wrist and ankle to the bed at all hours of the day. Exh. B. An ICE officer was present twenty-four hours a day, including when he would go to the bathroom and throughout the night when he would sleep. *Id.* When he requested the curtain in his hospital room be closed so he could sleep, the agent refused and told him they needed to keep an eye on him the entire time. *Id.*

## LEGAL FRAMEWORK AND ARGUMENTS

### I. The warrant requirement of 8 U.S.C. § 1226(a) is a precondition to arrest.

32. In drafting the statute governing discretionary detention of noncitizens in removal proceedings, Congress imposed a clear, non-discretionary prerequisite to any arrest or detention under § 1226(a). Specifically, the statute states that "*[o]n a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added).

33. The structure of § 1226(a) confirms that the existence of a warrant is a *precondition* to arrest and detention. Otherwise, the prepositional phrase "on a warrant" would be superfluous. Recognizing this, courts in this Circuit have enforced the warrant requirement by ordering noncitizens' immediate release from custody where the government failed to obtain a pre-arrest warrant. *E.g.*, *Cristin v. Armant, et al.*, No. 5:26-cv-04024-DTB, slip op. at 5-8 (C.D. Cal. July 29, 2026); *Landa Zaragoza, et al. v. Chestnut, et al.*, 1:26-cv-05294-EJD, 2026 WL 2049841 (E.D. Cal. July 15, 2026); *Urias v. Semaia*, 5:26-cv-02753-DTB, 2026 WL 1710375 (E.D. Cal. June 10, 2026).

34. Accordingly, where Respondents did not obtain an arrest warrant beforehand and the narrow exception to the warrant requirement does not apply (*see infra* section II),

Respondents have no authority to arrest or detain an individual under § 1226(a), warranting their immediate release from custody. *See Cristin*, No. 5:26-cv-04024-DTB, slip op. at 5-8; *Landa Zaragoza*, 2026 WL 2049841; *Urias*, 2026 WL 1710375.

35. The Fourth Amendment promises "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated . . .." U.S. CONST. AMEND. IV (emphasis added). "[I]mmigration stops and arrests [are] subject to the same Fourth Amendment requirements that apply to other stops and arrests—reasonable suspicion for a brief stop, and probable cause for any further arrest and detention." *Morales v. Chadbourne*, 793 F.3d at 208, 215(1st Cir. 2015). Reasonable suspicion must be based on the totality of circumstances and must be particularized to the individual being stopped, not based on generalizations that would cast suspicion on large segments of the law-abiding population. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000); see also *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006) (same).

**II. The exception to the warrant requirement under 8 U.S.C. § 1357 is narrow and still requires constitutionally adequate probable cause.**

36. The relevant exception to the warrant requirement only allows an "officer or employee of the Service authorized under the regulations" to make an arrest without a warrant if two preconditions are satisfied. 8 U.S.C. § 1357(a). First, the arresting officer must have "reason to believe" the individual is in the United States in violation of any such law or regulation and, second, reason to believe there is a "likelihood of the person escaping before a warrant can be obtained for [their] arrest." 8 U.S.C. § 1357(a)(2). The phrase "reason to believe" has been construed as "the equivalent of probable cause[,]" as noncitizens present in the United States are "sheltered by the Fourth Amendment in common with citizens[.]" *Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217,

222-23 (D.C. Cir. 1971); *see also Tejeda-Mata v. Immigr. & Naturalization Serv*., 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause").

37. The regulations governing arrests similarly require that "an arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States," and "that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(i)-(ii); *see M-J-M-A- v. Hermosillo*, 822 F.Supp.3d 1147, 1158 (D. Or. 2026); *Chogllo Chaffa v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (same); *Benipal v. Rokosky*, No. CV 26-01306 PHX RM (CDB), slip op. at 7 (D. Ariz. Apr. 24, 2026) (same). "Taken together, these standards mean that an immigration officer can know for certain that someone is present in violation of immigration laws, and still does not have authority to arrest them without a warrant or an individualized probable cause determination that the individual is 'likely to escape before a warrant can be obtained.'" *M-J-M-A*, 822. F.Supp.3d at 1172 (citing 8 C.F.R. § 287.8(c)(2)(ii)) (emphasis in original).

38. Consistent with the Fourth Amendment, a warrantless seizure "of a person must be supported by probable cause *particularized* with respect to *that person*." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (emphasis added). In addition, probable cause must be established by "facts known to the arresting officer at the time of the arrest" and justification through facts learned after an arrest is impermissible. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). Arrest for the mere purpose of investigating immigration status would also run afoul of the Constitution. *See, e.g., U.S. v. Ortiz-Hernandez*, 427 F.3d 567, 576 (9th Cir. 2005) (per curiam) (collection of evidence for investigatory purposes after unlawful arrest violated Fourth Amendment); *Morales v.*

*Chadbourne*, 996 F. Supp. 2d 19, 29 (D.R.I. 2014) (McConnell, J.), *aff'd* at 793 F.3d 208 (1st Cir. 2015) ("[T]he Fourth Amendment does not permit seizures for mere investigations.").

**i. Probable cause as to unlawful presence in the United States.**

39. Immigration officers need only reasonable suspicion to briefly stop an individual and question them about their immigration status, "but any further detention . . . must be based on . . . probable cause." *United States v. Brignoni-Ponce*, 422 U.S. 873, 882 (1975); *see also Vargas Ramirez v. United States*, 93 F.Supp.3d 1207, 1218-19 (W.D. Wash. 2015) ("if an agent detains a person for a brief, investigatory stop, the stop must be supported by reasonable suspicion that the person is unlawfully present in the United States, and if an agent arrests a person, the arrest must be supported by probable cause that the person is unlawfully present in the United States") (citing *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 497 (9th Cir. 1994); *Tejeda-Mata*, 626 F.3d at 725; *Zepeda v. I.N.S.*, 753 F.2d 719, 725 (9th Cir. 1983)). Facts that may give rise to reasonable suspicion, without more, "fall short of establishing probable cause" where they "merely implicate[] generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *Vargas Ramirez*, 93 F.Supp.3d at 1227 (quoting *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006).

40. Probable cause "to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). This information must be "based on facts particularized to that person and known *prior to* the arrest" and requires "a probability or substantial chance" of the conduct in

question. *M-J-M-A*, 822 F.Supp.3d at 1182 (emphasis in original) (internal citations and quotation marks omitted). When evaluating whether probable cause exists, courts should consider "the totality of circumstances." *Vargas Ramirez*, 93 F.Supp.3d at 1227.

**ii. Probable cause as to likelihood of escape.**

41. To conduct a warrantless arrest, an immigration officer must also have reason to believe that an individual is "likely to escape before a warrant can be obtained for [their] arrest." 8 U.S.C. § 1357(a)(2). Further, the same temporal limits that apply to unlawful presence apply here – this determination "must be based on information known to the officer at the time of arrest and particular to the person arrested. An arrest cannot be justified after the fact." *M-J-M-A*, 822 F.Supp.3d at 1158.

42. Courts have defined what officers should consider when evaluating whether an individual is likely to escape, finding that the question "looks to 'the totality of the circumstances known to the officer before making the arrest,' including whether the officer can determine the individual's identity, previous escape attempts, and community ties such as a family, a home, or a job." *Id.* (citation omitted); *see e.g., United Farm Workers v. Noem*, 829 F.Supp.3d 801, 807 (E.D. Cal. 2026) (requiring "documentation for every warrantless stop or arrest" of a noncitizen, containing "particularized, narrative facts supporting the arresting Agent's conclusion that reasonable suspicion existed [to support] the detention and that probable cause existed to support the arrest); *Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1240 (D. Colo. 2025) (factors relevant to probable cause determination include "the officer's ability to determine the person's identity; attempted flight from the officer; knowledge of the person's prior escapes or evasions of immigration authorities or, on the other hand, prior court attendance or other compliance with authorities; ties to the community (including family circumstances, residence, or

employment); and other *specific circumstances* that weigh in favor of or against a reasonable belief that the person is likely to abscond") (emphasis added).

**II. Continued detention without a warrant violates Respondents' own regulations.**

43. Respondents' regulations place additional requirements on designated officers following a warrantless arrest. Specifically, to keep someone detained after such an arrest, officers have "48 hours to conduct an initial custody determination and obtain a post-hoc warrant." *Fuentes-Gomez v. Casey*, No. 26-cv-3755-LL-MSB, 2026 WL 2211522, at *2 (S.D. Cal. Jul. 31, 2026) (citing 8 U.S.C. § 1357(a); 8 C.F.R. §§ 236.1(b)(1), 287.3(d)); *see also J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) ("[i]ssuance of a warrant is a necessary condition to justify discretionary detention under [§] 1226(a)") (quoting *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025)).

44. In making such a custody determination, the officer must determine "whether the [noncitizen] will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d). At such a custody determination, an officer may release a noncitizen not subject to enumerated exceptions, provided that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons," and that they are "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

45. If the officer believes that the noncitizen should remain in custody, the officer must issue a warrant to keep them detained. 8 C.F.R. § 287.3(d).

46. Where such a determination is not made, or where a warrant is not timely issued after such a determination, courts have held that the noncitizen's detention was unlawful and ordered their immediate release. *E.g.*, *Valle v. Mullin*, No. 26-CV-3450-LL-

GC, 2026 WL 2076024, at *2 (S.D. Cal. Jul. 17, 2026) (ordering petitioner's immediate release where there was no evidence the government issued a warrant for arrest when she was detained); *Mayen v. Warden*, No. 1:26-cv-02354-DAD-AC, 2026 WL 1158217, at *2 (E.D. Cal. Apr. 29, 2026) (same); *Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (release is "an available and appropriate remedy for detention that lacks a lawful predicate"). Indeed, a "post-hoc warrant after [48] hours does not comply with 8 U.S.C. § 1226(a) and cannot support [a] Petitioner's detention." *Matute Garcia v. Larose*, No. 26-cv-4075-GPC (SBC), 2026 WL 2211804, at *2 (S.D. Cal. Jul. 31, 2026); *see also Ramirez Olvando v. Noem*, 810 F.Supp.3d 1209, 1226 (D. Colo. 2025) (post-hoc warrants "ha[ve] no legal effect" and cannot "fix[]" a warrantless arrest not supported by probable cause).

47. Further, a bond hearing before an immigration judge is contemplated by the regulations "[a]fter an initial custody determination by the district director," enabling an individual in immigration custody to obtain review of the mandatory 48-hour custody review determination. 8 C.F.R. § 236.1(d)(1). Because the initial custody determination is a "*pre-deprivation* opportunity" for an individual to demonstrate they are entitled to release, a post-deprivation hearing without any pre-deprivation facts to rely on would be an inadequate remedy. *Barrera v. Blanche*, No. 2:26-cv-02129, 2026 WL 2410454, at *5-6 (D. Nev. Aug. 18, 2026) ("ordering a bond hearing rather than Petitioner's immediate release would effectively bless Respondents' 'detain first, justify later' approach, which entirely disregards § 1226(a)'s regulatory framework") (citing *Sanchez Sandoval v. Blanche*, No. 2:26-cv-01387-RFB-NJK, 2026 WL 1803675, at *4 (D. Nev. June 23, 2026); *E.A.T.B. v. Wamsley*, 795 F.Supp.3d 1316, 1326 (W.D. Wash. 2025); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)).

48. Indeed, where Respondents "lack[] the lawful authority to detain a noncitizen in the first place . . . an order directing a bond hearing cannot adequately remedy the harm." *Juan v. Larose,* No. 3:26-cv-3568-JES-AHG, 2026 WL 2411612, at *4 (S.D. Cal. Aug. 18, 2026); *see also Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) ("post-detention safeguards are definitionally inappropriate to address the harm" of a lack of pre-detention process, which "only [] pre-detention process can protect against").

**III. Immigration detention violates Substantive Due Process and becomes punitive when it negatively impacts a detainee due to a lack of sufficient medical care.**

49. Substantive "due process requires that the nature and duration of [civil incarceration] bear some reasonable relation to the purpose for which the individual is committed"; otherwise, it amounts to punishment. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (quoting *Jackson*, 406 U.S. at 738). The court may consider the conditions in place at a detention facility when determining whether there has been a substantive due process violation. In other immigration cases, the courts have asked whether the conditions of detention are comparable to the conditions of pretrial detention or a prison sentence. *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1200 (E.D. Cal. 2025) (citing *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024)). In *Doe*, a detainee who was held in California City had his substantive due process rights violated because he was not given his prescribed medications enough or at the right times, the detention facility was dirty and unhygienic, there was inadequate clean water, and the detainees were locked in cells for most of the day. *Id*. Therefore, the conditions of his detention were "excessive in relation to [their] regulatory purpose" and violated substantive due process. *Id*. at 1201.

50. A court may also consider a petitioner's medical condition to find that their substantive due process rights were violated. A detainee may "[demonstrate] that he has

health conditions that put him at high risk of severe illness" due to conditions inside a detention facility. *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 2512410, at *5 (N.D. Cal. May 15, 2020) (finding that petitioner did have standing to assert that his due process rights were violated because he was immunocompromised and the conditions of detention heightened his risk of exposure to COVID-19).

51. The conditions at Desert View Annex and the continued disregard for medical care are not proportional to any interest the government may claim. Any such risk can be sufficiently mitigated by less restrictive measures than continued physical custody. *See Perez v. Wolf*, 445 F. Supp. 3d 275, 291, 295 (N.D. Cal. 2020) (upholding IJ's finding of dangerousness and nonetheless ordering release from immigration detention on conditions of release based on substantive due process claim); *Ortuño v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 1701724, at *4 (N.D. Cal. Apr. 8, 2020) (holding that physical custody was "excessive in relation" to DHS's undisputed interest in preventing flight risk and ordering release from immigration detention on conditions of release based on substantive due process claim); *Doe v. Barr* (*Doe v. Barr II*), No. 20-cv-02263-RMI, 2020 WL 1984266, at *6 (N.D. Cal. Apr. 27, 2020) (same).

52. In immigration habeas cases, courts regularly order release upon determining that detention violates substantive due process. *See*, *e.g.*, *Lawson v. Gerlinski*, 332 F. Supp. 2d. 735, 744-45 (M.D. Pa. 2004) (concluding that petitioner's prolonged immigration detention violated substantive due process and ordering release); *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 752 (M.D. Pa. 2004) (same); *Nunez- Pimentel v. ICE*, No. 1:07-CV-1915, 2008 WL 2593806, at *5 (M.D. Pa. June 27, 2008) (same); *see also Ekeh v. Gonzales*, 197 F. App'x 637, 638 (9th Cir. 2006) (ordering supervised release pursuant to *Zadvydas*); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 919 (D. Minn.

2007) (same); *Nguyen v. Fasano*, 84 F. Supp. 2d 1099, 1113 (S.D. Cal. 2000) (issuing order to show cause why petitioner should not be released pursuant to *Zadvydas*).

53. Indeed, district courts in this Circuit have regularly ordered release when conditions of confinement are excessive in relation to a detained person's risk of flight or danger to the community. *See, e.g., Doe, 810 F. Supp. 3d at 1200-02; Doe*, 732 F. Supp. 3d at 1089; *Espinoza v. Wofford*, No. 1:24-cv-01118-SAB-HC, 2025 WL 1556590, at *9 (E.D. Cal. June 2, 2025); *Bent v. Barr*, 445 F. Supp. 3d 408, 414-415, 421 (N.D. Cal. 2020); *Doe v. Barr*, No. 20-cv-02141-LB, 2020 WL 1820667, *8-*10 (N.D. Cal. Apr. 12, 2020); *Ortuño*, 2020 WL 1701724, at *3-5; *Doe*, 2020 WL 1984266 at *6-*7.

54. Even if "it is undisputed that respondents have a non-punitive purpose in detaining" a petitioner, the petitioner may show that their detention in conditions "in spite of [respondents'] knowledge of said petitioner['s] respective high-risk status, is 'excessive in relation to [that] purpose.'" *Ortuño,* 2020 WL 1701724 *at *4* (quoting *Jones*, 393 F.3d at 932).

## ARGUMENT

### I. Respondents violated 8 U.S.C. § 1226(a) by failing to issue a warrant prior to Petitioner's arrest.

55. Respondents failed to produce a warrant or notice to appear prior to Petitioner's arrest. Rather, as the I-213 concedes, the immigration officers who approached Petitioner could not ascertain his identity prior to approaching him in a convenience store parking lot. Exh. A. Respondents never identified him by name, nor did they tell him why they were detaining him, even when he explicitly asked. Exh. B. Respondents' failure to issue a warrant before arresting and detaining Petitioner violated the terms of 8 U.S.C. § 1226(a).

**II. Respondents violated 8 U.S.C. § 1357(a) by failing to establish probable cause during Petitioner's warrantless arrest.**

56. Absent an arrest warrant, 8 U.S.C. § 1357(a) only allows an "officer or employee of the Service authorized under the regulations" to make an arrest without a warrant if two preconditions are satisfied: (1) the officer has probable cause that the individual is in the United States in violation of law or regulation, and (2) probable cause that the person will escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

**i. Respondents could not have had probable cause to believe that Petitioner was in the United States unlawfully.**

57. Respondents could not have established probable cause to believe that Petitioner was in the United States unlawfully. For probable cause to exist, an officer should know at the time of the arrest that there was reasonable information, "particularized with respect to that person," that the person was committing or had committed an offense in violation of immigration law. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Under no circumstance may someone's perceived race or ethnicity alone create a reasonable suspicion that the person is in the country without status. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885–87 (1975) ("Large numbers of native-born and naturalized citizens have the physical characteristics identified with Mexican ancestry, and even in the border area a relatively small proportion of them [lack status].").

58. When ICE officers approached Petitioner, Respondents did not have any information about him, as evidenced in their I-213 where they stated they "had observed male subject" and "decided to contact subject to determine whether…[he] was of immigration interest" Exh. A. By Respondent's own record, the agents engaged in unlawful racial profiling to inquire into Petitioner's immigration status. Petitioner briefly fled as he had no reason to know who they were, why they were surrounding him, and he

feared for his safety. Officers at no point identified petitioner by name nor did they identify themselves as ICE officers prior to being tackled to the ground and detained. Exh. B.

59. Respondents did not explain to Petitioner why he was being arrested, even when he asked. *Id*. During their encounter, Petitioner did not give Respondents any information about himself that was "particularized" or could have formed the basis for probable cause. Thus, there is no way that Respondents could have established probable cause prior to his arrest to justify Petitioner's unlawful detention.

**ii. Respondents could not have had probable cause to believe that Petitioner would flee before a warrant could be obtained.**

60. Respondents also could not have established probable cause to believe that Petitioner would flee before a warrant for his arrest could be issued. The immigration officers who arrested Petitioner noted that they did not know Petitioner's identity before unlawfully detaining him. They would have had the opportunity to inquire into his status and background to determine whether there was enough probable cause to obtain a warrant. Petitioner has also lived in United States for twenty five years.

61. Furthermore, fleeing from immigration officials alone is not enough to establish probable cause to believe that petitioner would flee before a warrant could be obtained. *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 890–91 (C.D. Cal. 2025). Any reasonable person in Petitioner's similar disposition would have fled from men who did not identify themselves in the early morning hours at a convenience store parking lot. His decision to flee was only due to his inability to distinguish the agents as such. The officers announced who they were only after Petitioners had been thrown to the ground violently, injured, handcuffed and taken to an unmarked vehicle. After the ICE agents

identified themselves, Petitioners cooperated with their efforts and questions. These facts demonstrate that he was not likely to escape before a warrant could be obtained.

62. Thus, Respondents failed to show any probable cause that Petitioner would flee before an arrest warrant could be obtained.

**iii. Respondents failed to conduct an initial custody determination for Petitioner or issue a warrant to justify continued detention.**

63. Respondents never conducted an initial custody determination within 48 hours of Petitioner's arrest, as contemplated by their regulations. *See Fuentes-Gomez*, 2026 WL 2211522, at *2; 8 U.S.C. § 1357(a); 8 C.F.R. §§ 236.1(b)(1), 287.3(d)). Once he was detained, he was transferred to the Santa Ana Field Office. Exh. B. ICE agents never asked him any questions to determine whether he should be considered a flight risk. Furthermore, within 48 hours after his arrest, Petitioner was hospitalized at Victor Valley Global Medical Cener for three weeks. Although given ample opportunity to question Petitioner to make a determination regarding his risk of flight or danger, the officers failed to do so. Thus, their continued detention of Petitioner after 48 hours, in the absence of any formal custody determination or warrant, was unlawful.

**III. Petitioner's detention is punitive and excessive in violation of due process.**

**i. Respondents' continued detention of Petitioner endangers his life and is therefore excessive in relation to its purpose.**

64. Petitioners' experience in attempting to seek medical care at Desert View Annex is consistent with the general findings that where detainees do not have adequate or reliable access to medical care, their ongoing detention should be considered punitive. *See Doe v. Becerra*, 732 F.Supp.3d 1071, 1088-89 (N.D. Cal. 2024) (noting limited "access to legal services and medical care" is a factor that can lead to a presumption that conditions are punitive).

65. Petitioners suffers from an esophageal obstruction. Exh. C, at 21. He was approved for surgery in February 2026 and the administrative notes state that the surgery has not been performed as of May 2026 when it was already approved. *Id.* at 19. Instead, Petitioner is being held in a detained living environment that refuses to provide the medical care he requires which directly affects his quality of life. As a result, he is unable to reliably drink water and eat meals without experiencing pain and throwing up. Given the rise in warm temperatures, his inability to consistently drink water further jeopardizes his health. Thus, his continued detention endangers Petitioner's life and is excessive in relation to its purpose. *See, Doe*, 810 F. Supp. 3d at 1201.

**ii. Petitioner is not a flight risk or a danger to the community; therefore, his detention is excessive in light of available alternatives.**

66. Petitioner has no criminal history in the United States or anywhere else in the world. He is not a flight risk because he has resided in the United States for twenty five years, he has a pending I-130 application that was filed in October 2023, and he is currently represented by counsel in his removal proceedings. Through his pro bono counsel, he is eligible and preparing to apply for immigration relief. He is dedicated to these proceedings as he is aware this is the only way he can gain relief and lawfully remain in the United States.

67. Furthermore, Petitioner has a fixed address in the United States that he has lived at for approximately 8 years. He has made close friendships with community members and others he has met through work. He has known these individuals for over twenty years. He also has a close relationship with his brother and cousins that live in the United States. This shows that Petitioner is not a flight risk and his continued detention is excessive in light of available alternatives to detention.

68. On August 31, 2026, a bond hearing was held to determine whether Petitioner would be eligible to be released on bond. The IJ held that while petitioner was not a danger, he should be considered as a flight risk. He held that although sympathetic to petitioner's health issues, the lack of evidence proving he had health insurance to seek treatment outside of detention was not persuasive enough to warrant his release on any amount of bond. Furthermore, he held that although he has lived for a significant amount of time in the United States, there is no proof that he would continue to show up for his court hearings.

69. Contrary to the immigration judge's finding, Petitioner presents little to no risk of flight. Furthermore, any of the numerous, effective alternatives to detention would be more than sufficient to mitigate any flight risk. Alternatives to immigrant detention include ankle monitors, phone location monitoring, and the Intensive Supervision Appearance Program. Studies also show that 96% or 97% of non-detained immigrants with a lawyer attend all their hearings, and alternatives to detention have "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings."[1]

70. Thus, Petitioner's continued detention is excessive in violation of due process. See *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

**IV. Respondent's warrantless arrest of Petitioner violated his fourth Amendment right against unreasonable seizure.**

71. Courts in the Ninth Circuit have made clear that an arresting officer must have both probable cause of removability and an individualized assessment of flight risk before making a warrantless arrest of a non-citizen. *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025). The Fourth Amendment also extends to Petitioner as a noncitizen, particularly given his substantial connections to the United States. *United*

[1] *See* American Immigration Council, *Measuring In Absentia Removal in Immigration Court* (Jan. 2021), https://www.americanimmigrationcouncil.org/report/measuring-absentia-removal-immigration-court/.

*States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222, 271 (1990) (holding that non-citizens who has resided in the United States for a significant amount of time and have substantial connections are protected by the Fourth Amendment). Here, Petitioner has resided in the United States for twenty-five years. He has significant family ties in the United states, including his brother who is a United States Citizen.

72. Weighing the totality of the circumstances, Petitioner's arrest was unreasonable under the Fourth Amendment. The agents did not have a warrant for Petitioner's arrest. Rather, they impermissibly based their arrest simply on Petitioner's race and class, citing Petitioner's appearance, his attire, and his perceived form of employment based on his attire and location. *United States v. Montero-Camargo*, 208 F.3d 1122, 1134 (9th Cir. 2000) ("Hispanic appearance is of little or no use in determining which particular individuals among the vast Hispanic populace should be stopped by law enforcement officials on the lookout for illegal aliens.").

73. Furthermore, the manner in which they arrested Petitioner was unreasonable. They had approached him at approximately 6:00 a.m. in a convenience store parking lot from an unmarked vehicle. Petitioner was afraid and confused, as any reasonable person would be if they were in this predicament. The agents used an incredible amount of force against Petitioner, who was unarmed, stomping on his hand. He has never received any medical care for his injured hand and experiences mobility issues to this day.

74. The Fourth Amendment does not allow fleeing alone to fulfill the exigency exception to the warrant requirement, particularly when there is a lack of probable cause. *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 643 F. Supp. 884, 898 (N.D. Cal. 1986) (holding that even though plaintiffs fled at the sight of multiple Immigration and Naturalization Service vehicles appearing to conduct a warrantless raid,

this did not create any exigent circumstances making their warrantless arrests unlawful). Here, the officers did not have probable cause to arrest Petitioner prior to his fleeing. Furthermore, after Petitioner realized who they were, he complied with their arrest. Any government interest that may be preserved under the Fourth Amendment that applies in this instance does not outweigh the unreasonable and extensive manner of this intrusion.

**V. The Appropriate Remedy is Release**

75. Petitioner seeks immediate release to prevent the ongoing violation of his constitutional and statutory rights. Petitioner has been deprived of his Fifth Amendment right to Due Process because he was arrested and detained by the Department of Homeland Security without an arrest warrant and without any prior notice, hearing, or neutral determination that his detention was justified. *See Clene C.D. v. Robbins, et al.*, No. 1:25-cv-KES-SKO (HC) (E.D. Cal. Dec. 2, 2025); *Rodriguez Diaz v. Kaiser*, 2025 WL 3011852, at *6–8 (N.D. Cal. Sept. 16, 2025); *Guillermo M.R. v. Kaiser*, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025); *Pinchi*, 2025 WL 2084921, at *3–5; *Ortega v. Bonnar*, 415 F.Supp.3d 963, 939 (N.D. Cal. 2019).

76. Return to the status quo, furthermore, requires release without restrictions on Petitioner's liberty such that he will still be in ICE "custody." *See Solis v. Noem*, No. 2:26-CV-00053-RFB-EJY, 2026 WL 776981, at *1 (D. Nev. Mar. 19, 2026) (granting motion to enforce judgment where ICE imposed conditions on petitioner after being ordered to release petitioner on his own recognizance); *Martinez v. Noem*, No.SACV 26-00361-KK (DTBx), 2026 WL 637364, at *3 (C.D. Cal. Mar. 6, 2026) (explaining how imposing conditions on release "directly contravene[d]" the court's order to return petitioner "to the status quo").

## CLAIMS FOR RELIEF

### COUNT ONE

**Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2)**

**Warrantless Arrest Without Probable Cause of Unlawful Presence or Flight Risk**

77. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

78. On January 22, 2026 Petitioner was idly standing outside of a convenience store when several ICE officers surrounded him and arrested him without ever properly identifying themselves or showing him a warrant. Petitioner only attempted to flee because he became afraid for his personal safety as he was not aware who was ambushing him in the early morning hours that day. The ICE officers did not ask Petitioner any questions about family ties, length of time in the United States, criminal history or anything else that could have established the likelihood (or non-likelihood) of his flight risk status before a warrant could have been obtained.

79. Thus, Respondents arrested Petitioner without a warrant as required under 8 U.S.C. §1226(a), and before the arrest, Respondents failed to make an individualized finding of flight risk in violation of 8 U.S.C. § 1357(a)(2).

80. Because no warrant was issued before Petitioner's arrest, Respondents lack statutory authority to continue detaining him. No other provision of the INA authorizes his detention: § 1226(c) (criminal mandatory detention) does not apply (no criminal convictions); § 1225(b)(2) does not apply (Petitioner entered without inspection and lived in the United States for twenty five years before his ICE arrest and is not an applicant for admission); and § 1231 does not apply (no final removal order). District courts across the country, including in this district, have held that detention without a pre-arrest warrant violates 8 U.S.C. § 1226(a) and requires immediate release. *See Cristin*, slip op. at 8; *Batres*, slip op. at 7; J.A.C.P., 2025 WL 3013328, at *8; *Benipal*, slip op. at 7.

**COUNT TWO**

**Violation of 8 U.S.C. § 1357 and Implementing Regulations**

81. The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

82. 8 U.S.C. § 1357 permits an immigration officer to conduct a warrantless arrest only if the officer has "reason to believe" that an individual is in the United States in violation of the immigration laws, and is likely to escape before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2). A "reason to believe" is equivalent to "the constitutional requirement of probable cause." *Tejeda-Mata*, 626 F.2d at 725.

83. Here, immigration officers had no reason to believe Petitioners was in the United States in violation of the immigration laws because they did not know his identity or anything about him prior to coincidentally coming into contact with him on the morning of January 22, 2026. After observing him in the area, the officers decided to confront him to ascertain his status based on his appearance as a Hispanic male. Stating only that he was from another country cannot transform reasonable suspicion for a stop into probable cause for arrest.

84. Officers also had no reason to believe that Petitioners was likely to escape before a warrant could be obtained. Although he initially tried to flee out of fear for his own personal safety, that standing alone is not enough. Officers also did not conduct an individualized assessment of his circumstances, including any community ties, his work, or family relationships in the United States.

85. In addition, officers failed to conduct the necessary custody determination for Petitioners within 48 hours of his arrest.

86. Accordingly, Petitioner's warrantless arrest and continued detention are unlawful under the INA and implementing regulations, warranting Petitioner's immediate release.

**COUNT THREE**

**Violation of Fourth Amendment**

**Unreasonable Seizure**

87. The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

88. The Fourth Amendment promises "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated . . .." U.S. CONST. AMEND. IV (emphasis added). "[I]mmigration stops and arrests [are] subject to the same Fourth Amendment requirements that apply to other stops and arrests—reasonable suspicion for a brief stop, and probable cause for any further arrest and detention." *Morales v. Chadbourne*, 793 F.3d at 208, 215(1st Cir. 2015). Reasonable suspicion must be based on the totality of circumstances and must be particularized to the individual being stopped, not based on generalizations that would cast suspicion on large segments of the law-abiding population. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000); see also *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006) (same).

89. Petitioner's arrest was unsupported by probable cause. Officers approached him outside a convenience store in the early morning without identifying themselves or presenting a warrant. His brief flight was prompted by fear for his safety, not an intent to evade immigration authorities. Before arresting him, officers asked no questions about his family ties, length of residence, criminal history, or even his name. They were clearly unable to determine whether he was likely to flee before a warrant could be obtained. Without any additional information, the officers did not possess reasonable suspicion that the Petitioner had committed or was about to commit any offense.

90. Here, no articulable facts have been identified giving rise to individualized suspicion as to the Petitioner. An arrest initiated without any stated basis and without particularized suspicion cannot satisfy the Fourth Amendment's minimum requirements. *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 890–91 (C.D. Cal. 2025).

91. For the reasons stated above, Petitioner’s search and seizure violated his rights under the Fourth Amendment.

**COUNT FOUR**

**Violation of Fifth Amendment**

**Procedural Due Process**

92. The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

93. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. “Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects.” *Zadvydas*, 533 U.S. at 690.

94. Respondent’s detention of Petitioner violates his procedural due process rights because he was detained without lawful authority, infringing on his fundamental right to liberty.

95. Petitioner has a private interest in remaining free that outweighs the government’s interest. He has twenty five years of continuous presence in the United States, family ties, and has been diagnosed with an esophageal obstruction that requires surgery. Taking into consideration the substantial length of Petitioner’s time in the United States, his community involvement and family ties, he must at the very least be afforded a pre-deprivation hearing before a neutral decision maker.

**COUNT FIVE**

**Violation of the Fifth Amendment**

**Substantive Due Process**

96. The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

97. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. The government has only two legitimate interests that may be served by civil immigration detention: preventing flight from removal proceedings and protecting the community from danger.

98. Due process prohibits the government from subjecting individuals to punitive civil detention. Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is detained. Civil custody that is excessively prolonged in relation to the government's interest is unconstitutionally punitive. When a civil restriction is excessive in relation to a governmental interest, or the government could accomplish its interests through less restrictive means, the restriction is unconstitutionally punitive.

99. Petitioner does not pose a danger or flight risk, certainly not of the magnitude that would justify the lack of medical care that he receives in detention. Petitioner's detention has become punitive as he has been detained for over six months and has unnecessarily been subject to worsening medical issues while in ICE custody due to the inadequate medical care available.

100. Petitioner's detention is excessive in relation to any legitimate government interest, which would be amply satisfied by his release on appropriate conditions. For these reasons, Petitioner's ongoing detention violates due process.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Declare that Petitioner's warrantless arrest and continued detention violates 8 U.S.C. §§ 1226(a), 1357, and/or 8 C.F.R. § 287.3;

(4) Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner;

(5) Enjoin Respondent's from transferring Petitioner outside of this judicial district during the pendency of removal proceedings;

(6) Award Petitioner attorney's fees and costs under 28 § U.S.C. § 2412, et. seq. (Equal Access to Justice Act), and on any other basis justified under law; and

(7) Grant any further relief this Court deems just and proper.

Dated: September 11, 2026

Respectfully Submitted,
*<u>/s/ Brianna Alfonso</u>*
Brianna Alfonso
*Pro Bono Attorney for Petitioner*

**<u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>**

I represent Petitioner, Marino Pineda-Matamoros, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 11th day of September, 2026.

Dated: September 11, 2026

Respectfully Submitted,

*<u>/s/ Brianna Alfonso</u>*
Brianna Alfonso
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring Street, 10th Floor

Los Angeles, CA 90014
Telephone: (213) 348-5063
Facsimile: (213) 282-3133
Balfonso@immdef.org
*Pro Bono attorney for Petitioner*