UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

MARINO PINEDA-MATAMOROS,
Petitioner,
v.
CYNTHIA ARMANT, et al.,
Respondents.

No. 2:26-cv-10242-JDE

ORDER REGARDING PETITION

## I.
## INTRODUCTION

On September 11, 2026, Marino Pineda-Matamoros ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus, challenging his arrest and detention by immigration authorities and seeking his immediate release. Dkt. 1 ("Petition" or "Pet."). He raises five claims: (1) violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2) based on a warrantless arrest without probable cause; (2) violation of 8 U.S.C. § 1357 and implementing regulations; (3) Fourth Amendment violation based on unreasonable seizure; (4) procedural due process violation based on detention without lawful authority; and (5) substantive due process violation based on "punitive civil detention." Respondents filed an Answer on September 18, 2026. Dkt. 7 ("Ans.").

Petitioner filed a Traverse on September 21, 2026. Dkt. 8 ("Trav."). For the reasons discussed below, the Petition is denied.

## II.

## BACKGROUND

Petitioner, a citizen of Honduras, entered the United States without inspection on or about April 3, 2001. He was arrested by Immigration and Customs Enforcement ("ICE") for the first time on January 22, 2026. Pet. ¶ 23. On January 22, 2026, members of DHS/ICE Enforcement and Removal Operations and U.S. Customs and Border Protection, Office of Field Operations, were conducting a targeted enforcement operation to locate and arrest another individual. Id., Exh. A. During the investigation, they observed Petitioner and decided to contact him to determine whether he was associated with the target of the investigation, possessed information regarding his whereabouts, or was otherwise of immigration interest. Id. Petitioner claims that the individuals who approached him were wearing plain clothing and had nothing indicating that they were ICE enforcement agents (Pet., Exh. B, Declaration of Petitioner ["Pet. Decl."] ¶ 5), while the Form I-213 indicates the officers were wearing tactical body armor displaying "DHS," "CBP," and "Police" identifiers and identified themselves as federal law enforcement officers and immigration officers. Pet., Exh. A. It is undisputed that when the officers approached, Petitioner attempted to flee. Id.; Pet. Decl. ¶ 6. Petitioner was taken into custody and removal proceedings were commenced. Pet. Decl. ¶ 10; Ans., Exh. B. An administrative warrant for arrest was issued and served on Petitioner the same day and an initial custody determination was made to detain him. Ans., Exh. D-E. Petitioner did not request a custody redetermination hearing. Id., Exh. E.

During intake at the Desert View Detention Center ("Desert View"), Petitioner reported to the guards that he was not feeling well and he was taken

to Victor Valley Global Medical Center on January 23, 2026, where he remained until February 16, 2026 due to an esophageal obstruction. Pet. Decl. ¶¶ 12-14. He claims he was supposed to receive surgery, but it has not been approved by Desert View. Id. ¶¶ 14-15. He otherwise claims he has not received adequate medical treatment. Id. ¶¶ 15-19.

Petitioner received a Rodriguez bond hearing on August 31, 2026, at which the government was required to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community. The immigration judge ("IJ") denied bond, finding Petitioner was a flight risk. Petitioner reserved an appeal. Ans., Exh. C.

## III.

## DISCUSSION

A petitioner seeking habeas relief must demonstrate that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The protections of habeas corpus extend to those in immigration detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin, 955 F.3d at 759.

"It is the petitioner's burden to prove his custody is in violation of the Constitution, laws[,] or treaties of the United States." Snook v. Wood, 89 F.3d 605, 609 (9th Cir. 1996) (citation omitted). Here, Petitioner has failed to carry his burden to prove that his current custody violates his federal rights.

### A. Challenges to Initial Arrest

Petitioner claims he is entitled to immediate release because his warrantless arrest lacked probable cause and officers failed to conduct the necessary custody determination within 48 hours of his arrest.

These claims fail for multiple reasons. As an initial matter, Petitioner has not demonstrated that his arrest was unlawful. The parties dispute whether ICE identified themselves, but it is undisputed that Petitioner tried to flee from ICE officers. Even if an arrest warrant did not exist at the time of arrest, an administrative arrest warrant was issued the same day. An initial custody determination also was made the same day; Petitioner did not request a custody redetermination hearing before an IJ at that time. See Ans., Exh. E.[1]

Even assuming the truth of Petitioner's allegations, as the Supreme Court has explained, "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." United States ex. rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) (citation omitted). "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984). Thus, "[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." Rodrigues De Oliveira v. Joyce, 2025 WL 1826118, at *5 (D. Me. July 2, 2025) (citation omitted); H.N. v. Warden, Stewart Detention Ctr., 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (explaining that even if petitioner's initial detention was unlawful, he was not entitled to habeas relief). "The dispositive question in this habeas proceeding is not whether Petitioner's arrest was procedurally

[1] Although Petitioner challenges the reliability of the Notice of Custody Determination form because the three boxes intended for the noncitizen were unchecked (Trav. at 13), he does not dispute that he signed the notice, undermining any challenge to its authenticity.

defective, but whether he is presently entitled to release from custody." Liu v. Janecha, 2026 WL 2178768, at *2 (C.D. Cal. July 27, 2026). Respondents issued a Notice to Appear under Immigration and Nationality Act § 212(a)(6)(A)(i) on January 22, 2026 and removal proceedings are pending. Petitioner has been provided a bond hearing, at which the IJ found he was a flight risk. The present detention is therefore based on his ongoing removal proceedings and the IJ's custody determination, rather than solely on the circumstances of his initial arrest. Id. Although Petitioner cites other district court decisions ordering release based on the facts in those cases (see, e.g., Pet. ¶ 33), the undersigned finds based on the facts here, release is not warranted.

Additionally, Petitioner has not shown a procedural due process violation warranting immediate release. Even assuming, without deciding, a cognizable liberty interest existed, the government has a "strong interest" in enforcing the immigration laws (Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)), and Petitioner has not shown that the post-detention process here was inadequate to safeguard that liberty interest and mitigate the risk of erroneous deprivation. As noted, Petitioner was arrested after he attempted to flee from immigration authorities and a prompt initial custody determination was made to detain him. Petitioner did not request a bond hearing. He then waited over seven months before challenging the constitutionality of his arrest. He was provided a Rodriguez bond hearing on August 31, 2026, at which he had the opportunity to challenge his detention and where the government bore the burden to show flight risk or danger by clear and convincing evidence. He was represented by counsel, had the opportunity to present evidence, and had the opportunity to appeal the outcome of the bond decision to the Board of Immigration Appeals. Further, Respondents indicate that Petitioner "still has the opportunity to receive the process he is due by asserting his right to a bond hearing." Ans. at 4.

Given that Petitioner has been found to be a flight risk, continued detention serves the government's interest in ensuring Petitioner's appearance at future proceedings. The undersigned finds that the process Petitioner received post-deprivation was sufficient to protect his liberty interest. See Aguilar v. Semaia, 2026 WL 166906, at *4-5 (C.D. Cal. Jan. 16, 2026) (denying request for immediate release from immigration detention in light of post-detention process provided, including a bond hearing); F.R.V. v. Semaia, 2026 WL 852064, at *2-3 (C.D. Cal. Mar. 24, 2026) (finding petitioner failed to show a likelihood of success on her due process claim where she was provided a post-detention bond hearing); Singh v. Bowen, 2026 WL 485760, at *4-5 (C.D. Cal. Feb. 19, 2026) (same); see also Rodriguez Diaz, 53 F.4th at 1208 (explaining that courts must "consider the process [petitioner] received [while detained]" and "the further process that was available to him").

Accordingly, Petitioner has not shown that his initial arrest renders his present detention unlawful or that release is the appropriate remedy.

**B. Substantive Due Process Claim**

Petitioner also contends that he is being detained in violation of the Due Process Clause because he "does not pose a danger or flight risk, certainly not of the magnitude that would justify the lack of medical care that he receives in detention." Pet. ¶¶ 99-100. This assertion ignores that he has been found to be a flight risk by an IJ. To the extent he otherwise challenges the adequacy of medical care at Desert View, Petitioner has not shown release on this basis may be properly pursued by means of a petition for writ of habeas corpus on the limited facts presented here. Petitioner identifies several medical issues that he claims are not being treated at Desert View, the most serious of which being a throat condition that affects his ability to eat and drink. Pet. Decl. ¶¶ 15-19. However, Petitioner has not provided sufficient information regarding his efforts to obtain medical treatment for these conditions, particularly with

respect to his throat condition. Although Petitioner claims Desert View has not provided "necessary treatment" for his throat condition and he needs surgery that Desert View has not approved, he does not provide information regarding any efforts to obtain medical care for this condition since being discharged from the hospital. The medical records provided by Petitioner appear to reflect Petitioner has been provided medical treatment for his throat condition and a GI consultation is pending. See Pet, Exh. C. On the current record, Petitioner has not demonstrated he is entitled to habeas relief.

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered denying the Petition with prejudice.

Dated: September 22, 2026__

JOHN D. EARLY
United States Magistrate Judge